# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

1. DAVID HAWKINS, )
   )
   Plaintiff, )
   )
   v. ) CIV-12-84-HE
   )
1. SCHWAN'S HOME SERVICE, INC., )
   )
   Defendant. )

## COMPLAINT

**COMES NOW, THE PLAINTIFF**, and for his cause of actions herein alleges:

## PARTIES

1. The Plaintiff is David Hawkins, an adult resident of Woods County, Oklahoma.

2. The Defendant is Schwan's Home Service, Inc., a foreign corporation doing business in Woods County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's claim is for disability discrimination and retaliation (including termination) for requesting reasonable accommodations for such disability, in violation of the Americans with Disabilities Act as set forth in 42 U.S.C. § 12111, *et seq*. and Oklahoma Anti-Discrimination Act. Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. § 1331. Because the state law claims arise out of the same core of facts, jurisdiction is vested over those claims under 28 U.S.C. § 1367(a).

4. All of the actions complained of occurred in Woods County, Oklahoma and the Defendant may be served in that county. Woods County is within the Western District of the United States District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Defendant has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is a covered employer under the ADA and Oklahoma's Anti-Discrimination Act.

6. Plaintiff suffers from a disability as defined by the Americans with Disabilities Act in that he suffers from a condition which materially impairs a major life activities as defined by 42 U.S.C. § 12102(1)(A), (2)(B) and/or is regarded as having such impairment as defined by 42 U.S.C. § 12102(1)(C), (3). Specifically, Plaintiff suffers from a heart condition which requires a pacemaker in order for his heart to function and which materially impairs the ability of his heart to function, and other conditions such as blood flow and blood pressure.

7. At the least Defendant perceived Plaintiff has having a disability. Supervisors of the company made comments about Plaintiff's heart condition, including that the company needed to terminate Plaintiff's employment because Plaintiff is a liability.

8. Plaintiff was employed by the Defendant from around 1987 until he was terminated on or about June 22, 2010.

9. Plaintiff performed his job duties satisfactorily and, around 2000 was promoted to the position of Facility Manager.

10. Around June 2008 Plaintiff took off work for approximately six weeks to undergo heart surgery. A pacemaker was placed in Plaintiff's heart.

11. Plaintiff told the Defendant the leave was to undergo heart surgery and to have a pacemaker implanted in Plaintiff's body to assist in regulating his heart.

12. After the surgery Plaintiff's physicians placed Plaintiff on light duty with restriction that prohibited Plaintiff from lifting no more than fifteen pounds and not lifting Plaintiff's arms above his head. These restrictions were to last for approximately the first two weeks of Plaintiff's return to work.

13. Plaintiff requested reasonable medical accommodations in the form of the light duty. Plaintiff made this request to Sara Brinks (Leave of Absence Administrator) and his immediate supervisor, Pat Lyons (General Manager) and provided the appropriate medical documentation.

14. Prior to surgery Plaintiff's job duties consisted of ordering products to be delivered by Defendant's delivery drivers, scheduling, and loading trucks with products which were then delivered to customers by other employees. Plaintiff was generally scheduled to work from about 4 p.m. until around Midnight.

15. Defendant refused to accommodate the Plaintiff and instead began assigning Plaintiff additional job duties which required Plaintiff to work more hours than he was scheduled to work prior to the surgery and accommodation request. Defendant began requiring Plaintiff to make product deliveries to customers which required Plaintiff to lift his arms above his head and lift more than fifteen pounds.

16. The additional duties assigned to Plaintiff by Defendant, as discussed in para. 13, above, were in addition to Plaintiff's regular duties. Thus, Plaintiff was required to work approximately thirty to forty hours <u>extra</u> each week (resulting in a work week of seventy to eighty hours) order to complete all the job duties assigned by Defendant.

17. During this period, the Plaintiff was hospitalized for approximately three days. Plaintiff was instructed by his physician that his illness resulted, in part, from exhaustion.

18. In reference to the three days Plaintiff was hospitalized, Mr. Lyons, Plaintiff's immediate supervsior, told the Plaintiff "I could fire you for this" and "you'd just better hurry up and get your *ass to work".

19. Plaintiff requested the ability to work less hours as a reasonable accommodation, but Defendant refused this request. In fact, Plaintiff was assigned <u>additional</u> job duties on top of his previously assigned duties.

20. During this time period Plaintiff was told by several employees that Defendant was trying to get Plaintiff to quit his job.

21. Around April 2010 Plaintiff took off work for treatment for his medical condition.

After Plaintiff returned, in April 2010, Defendant retaliated against the Plaintiff by taking away his job duties and to assign less favorable job duties Plaintiff had never before been required to perform.

22. Around June 14, 2010 Plaintiff complained to Jeff Booth (HR Manager) of the retaliatory treatment.

23. Around June 21, 2010 Plaintiff underwent a physical examination by Dr. Kirt Bierig, who had conducted all previous physical examinations of the Plaintiff. Plaintiff was required by the Defendant to pass a physical examination in order to drive a company vehicle. Plaintiff passed the physical and submitted the documentation showing he passed his physical to the Defendant.

24. Defendant refused to consider the medical certification of Dr. Bierig and ordered Plaintiff to undergo a second physical examination by a physician who was unfamiliar with the Plaintiff or his medical history. The physician did not conduct a physical examination on the Plaintiff, however the physician refused to give Plaintiff a passing evaluation because of the medical treatment Plaintiff took to treat his heart condition.

25. Defendant was aware the evaluation of the second physician was erroneous in that Defendant knew the Plaintiff has passed the first examination and knew that the second physician had wholly failed to give Plaintiff a physical examination. Further, prior to the physical examination, Plaintiff was satisfactorily performing his job duties and was capable of continuing to satisfactorily perform his job duties.

26. The essential functions of Plaintiff's job did not include driving a vehicle. Plaintiff had no medical restrictions that indicated he could not perform the essential functions of his job.

27. As a result of the second physical examination – and despite Plaintiff passing the first physical examination – Defendant refused to allow Plaintiff to continue working in

his job position.

28. Plaintiff asked for the reasonable accommodation of not being required to drive a company vehicle or being allowed to utilize the first physical examination which Plaintiff passed. Defendant refused to grant any accommodation requested by the Plaintiff and wholly refused to offer an alternative accommodation or otherwise engage in an interactive process with the Plaintiff.

29. Defendant placed Plaintiff on an unpaid suspension around June 22, 2010 and told Plaintiff he had thirty days to find a position as Material Handler or he would be terminated. The position of Material Handler paid significantly less than what Plaintiff earned and had less desirable job duties. Plaintiff was unable to find a position as Material Handler and was effectively terminated or, in the alternative, constructively discharged, around the beginning of July, 2010.

30. Motivating factors in the decisions to demote and terminate the Plaintiff were his disability and/or requests for reasonable accommodation. At the least these factors were part of a group of mixed motives for such decision such that Plaintiff is entitled to protection under the mixed motive doctrine.

31. As a result of the Defendant's discriminatory and retaliatory actions, the Plaintiff has suffered – and continues to suffer – lost wages (including past, present and future wages along with the value of benefits associated with such wages), emotional distress and dignitary harm symptoms including stress, worry, frustration, anxiety, sadness and other similar unpleasant emotions.

32. Plaintiff exhausted his administrative remedies by timely filing a charge of discrimination with the EEOC around August 28, 2010. On June 24, 2011 the EEOC issued a determination holding that the Defendant failed to engage in the interactive process with the Plaintiff and failed to offer alternatives for an accommodation for Plaintiff's disability. The EEOC issued Plaintiff his right to sue letter on January 12,

2012 and Plaintiff received such letter thereafter. This complaint is timely filed within ninety days of Plaintiff's receipt of his right to sue letter.

33. Discrimination on the basis of a disability and retaliation for Plaintiff's requests for reasonable accommodations is a violation of the Americans with Disabilities Act.

34. Under this Count Plaintiff is entitled to compensation for his lost earnings (past, present and future along with the value of benefits associated with such earnings), emotional distress/dignitary damages, attorney fees and costs.

35. Because the actions described above were willful, malicious, or, at the least, in reckless disregard of Plaintiff's federal rights, Plaintiff is entitled to an award of punitive damages against the Defendant.

**WHEREFORE,** Plaintiff prays that she be granted judgment in his favor and against the Defendant on all of his claims and that this Court grant the Plaintiff all available compensatory damages, punitive damages, liquidated damages, pre- and post-judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 25th DAY OF JANUARY, 2012**.

HAMMONS, GOWENS & HURST

s/ Amber L. Hurst
Mark Hammons, OBA #3784
Amber L. Hurst OBA#21231
HAMMONS, GOWENS & hurst
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Amberh@hammonslaw.com
Mark@hammonslaw.com

*Counsel for Plaintiff*

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED